DENNIS K. BURKE
United States Attorney
District of Arizona

STEVEN O. FORTNEY
Appearing pursuant to 28 U.S.C. § 517
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone:  (202) 307-0343
Email: Steven.O.Fortney@usdoj.gov

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

The United States,

        Plaintiff,

v.

Branch Licensing Group, LLC;
Diann Wall-Wilson; Ann L. Wilson; and
Scott L. Ressler,

        Defendants.

**COMPLAINT**

Now comes plaintiff, the United States, and for its complaint against defendants, alleges as follows:

### NATURE OF THE ACTION

1.  The United States seeks injunctive and other appropriate relief based upon defendants' violations of the Lanham Act, and in particular their use of the Navy's mascot, the Marine Corps' mascot, initials, and emblem, the Army's mascot and seal, and the Air Force's mascot and coat of arms in a manner that falsely suggests that their designs are associated with, or endorsed and approved by, the respective military service.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338.

3.  Venue is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4.  Plaintiff, the United States, is acting on behalf of its departments and agencies (collectively, "Government Agencies"), and in particular, the Department of the Navy, the Department of the Army, the Department of the Air Force, and the United States Coast Guard, an agency of the Department of Homeland Security.

5.  Upon information and belief, defendant Branch Licensing Group, LLC is a corporation located at 3226 North 81st Street, Scottsdale, Arizona, 85251.

6.  Upon information and belief, defendant Diann Wall-Wilson is the owner of Branch Licensing Group, LLC and resides at 19890 North Tapestry Court, Surprise, Arizona, 85374.

7.  Upon information and belief, defendant Ann L. Wilson is a principal of Branch Licensing Group, LLC and resides at 3226 North 81st Street, Scottsdale, Arizona, 85251.

8.  Upon information and belief, defendant Scott L. Ressler is a principal of Branch Licensing Group, LLC and resides at 34 Hickory Road, Short Hills, New Jersey, 07078.

## THE NAVY AND ITS TRADEMARKS

9.  The name "United States Navy" has been uniquely associated with the United States Department of the Navy ("Department of the Navy") since 1798, shortly after the adoption of the United States Constitution.

10.  The United States Naval Academy ("Naval Academy") is a subordinate organization of the Department of the Navy.  *See, e.g.*, 10 U.S.C. §§ 6951-76.

11.  The mascot of the Naval Academy is a goat, nicknamed "Bill the Goat."

12.  The goat has been associated with the Naval Academy since at least 1893, when it first appeared as its mascot in a football game against the Military Academy.

13.  The first goat named "Bill" appeared in 1899, again in a football game between the Naval Academy and the Military Academy, and the Naval Academy has continuously used the goat as its mascot since 1893 to the present time.

14. The goat has appeared at Naval Academy athletic events as well as in many magazines and brochures, which depict a connection between the goat and the Naval Academy. In addition to the live goat mascot, a person dressed in a goat costume also appears at athletic events.

15. The Naval Academy has used and continues to use the goat mascot in conjunction with the names "United States Navy," "U.S. Navy," "U.S. Naval Academy," "Naval Academy," "Navy," and other forms thereof ("Navy Names").

16. As a result of the extensive use by the Naval Academy of the goat in connection with Navy Names, as well as media attention and publicity, the goat has acquired incalculable goodwill and value, and is now recognized throughout the United States as being uniquely and unmistakably associated with the Naval Academy and the Department of the Navy.

17. The goat, used in conjunction with Navy Names, the Navy seal, the Navy emblem, or other markings affiliated with the Department of the Navy, is famous and very well known in the United States.

18. The United States, through the Department of the Navy, has acquired trademark rights in the goat when used in conjunction with Navy Names, the Navy seal, the Navy emblem, or any other markings affiliated with the Department of the Navy.

19. The name "United States Marine Corps" has been uniquely associated with the United States Marines Corps ("USMC") since 1798, shortly after the adoption of the United States Constitution.

20. The USMC is a component of the Department of the Navy.

21. An English bulldog acts as the mascot for the USMC.

22. The bulldog first appeared as the mascot for the USMC during World War I, when a USMC recruiting poster depicted an English bulldog wearing a helmet with the insignia of the Eagle, Globe, and Anchor ("EGA"), the emblem of the USMC.

23. In 1921, the USMC purchased an English bulldog, naming it "Jiggs," who was enlisted as a Private in the USMC on October 14, 1922 at the USMC Barracks in

-3-

1  Quantico, Virginia.  When Jiggs died on January 9, 1927, First Lieutenant Gene Tunney,

2  USMC Reserve, and a former world heavyweight boxing champion, presented to the

3  USMC a purebred English bulldog who was named Jiggs II.  Jiggs II resided at USMC

4  Barracks in Quantico, Virginia.

5      24.   In 1927, the British Royal Marines presented the USMC with an English

6  Bulldog, who became the mascot at USMC Barracks in Parris Island, South Carolina.

7      25.   In 1957 at the USMC Barracks in Washington, D.C. a bulldog named

8  "Chesty," named after Marine Lieutenant General Lewis B. "Chesty" Puller Jr., was

9  introduced as the mascot of the USMC Barracks in Washington, D.C.  A bulldog named

10  "Chesty" has constantly resided as the mascot of the USMC Barracks in Washington,

11  D.C. since 1957.  Currently Chesty XIII serves as the mascot, continuing the 90-year-old

12  association between the English bulldog and the USMC.

13      26.   The United States Marine Corps has used and continues to use the bulldog in

14  conjunction with the names "United States Marine Corps," "Marine Corps," "USMC,"

15  and other forms thereof ("USMC Names") as the mascot of the USMC in parades.

16      27.   As a result of the extensive use by the USMC of the bulldog in connection

17  with USMC Names, as well as media attention and publicity associating the bulldog with

18  the USMC, the bulldog has acquired incalculable goodwill and value, and is now

19  recognized throughout the United States and the world as being uniquely and

20  unmistakably associated with the USMC.

21      28.   The bulldog, used in conjunction with USMC Names, the USMC emblem, or

22  other markings affiliated with the USMC, is famous and is very well known in the United

23  States.

24      29.   The United States, through the USMC, has acquired trademark rights in the

25  bulldog when used in conjunction with the USMC Names, the USMC seal, the USMC

26  emblem, or any other markings reasonably tending to suggest approval, endorsement, or

27  authorization by the USMC.

28      30.   The official emblem of the USMC, the "EGA emblem," was adopted in its

1  current form by the Secretary of the Navy and Commandant of the Marine Corps in 1868.

2      31.  The EGA emblem is designated by statute as insignia of the United States and

3  written permission of the Secretary of the Navy is required to imitate or use the emblem

4  in a manner tending to suggest that such use is approved, endorsed, or authorized by the

5  Marine Corps or any other component of the Department of Defense.  *See* 10 U.S.C. §

6  7881.

7      32.  The USMC uses the EGA emblem in commerce on various media, including

8  but not limited to recruiting posters and letterhead.  The EGA emblem also is worn on the

9  collar of the USMC uniforms.

10      33.  As a result of that use, the EGA emblem has acquired incalculable goodwill

11  and value, and is now recognized throughout the United States and the world as being

12  uniquely and unmistakably associated with the United States Marine Corps.

13                **THE ARMY AND ITS TRADEMARKS**

14      34.  The name "United States Army" has been uniquely associated with the United

15  States Department of the Army ("Department of the Army") since shortly after the

16  adoption of the United States Constitution.

17      35.  The United States Military Academy ("Military Academy") located in West

18  Point, New York is a subordinate organization of the Department of the Army.

19      36.  The mascot of the Military Academy is a mule.

20      37.  The mule has been associated with the Military Academy since at least 1899,

21  when it first appeared as its mascot in a football game against the Naval Academy in

22  Philadelphia, Pennsylvania.  Since 1899, a mule has continuously been used as a mascot

23  of the Military Academy.

24      38.  In 1936, a mule named "Mr. Jackson" became the Military Academy's first

25  mascot.  Since Mr. Jackson, 15 mules have served as mascots of the Military Academy.

26      39.  The mule appears as the Military Academy's mascot at every home football

27  game as well as many away games, and a costume mule named "Blackjack" goes to both

28  home and away games.  The nationally televised football game between the Military

1  Academy and the Naval Academy has attracted approximately 5 million viewers in recent
2  years.

3      40.  The Department of the Army owns two federally registered trademarks
4  ("Army's Registered Trademarks") that demonstrate an association between the
5  Department of the Army and the mule mascot.  Both trademarks are owned by the
6  Department of the Army and depict a mule kicking its hind legs and wearing a blanket
7  displaying the letter "A," with a large block letter "A" in the background.  True and
8  correct copies of Registration Nos. 1,285,175 and 3,642,949 have been attached to this
9  Complaint as Exhibits 1 and 2.

10      41.  The Military Academy has used and continues to use the mule mascot in
11  conjunction with the Names "United States Army," "U.S. Army," "U.S. Military
12  Academy," "Military Academy," "Army," "West Point," and other forms thereof ("Army
13  Names") with commercial goods, including but not limited to clothing, commemorative
14  and promotional items, memorabilia, jewelry, brochures and literature, linens, glassware
15  and educational materials.

16      42.  As a result of the extensive use by the Military Academy of the mule in
17  connection with Army Names, as well as media attention and publicity, the mule has
18  acquired incalculable goodwill and value, and is now recognized throughout the United
19  States and the world as being uniquely and unmistakably associated with the Military
20  Academy and the Department of the Army.

21      43.  The mule, used in conjunction with Army Names, the Army seal, the Army
22  emblem, or other markings affiliated with the Department of the Army, is famous and is
23  well known in the United States.

24      44.  The United States, through the Department of the Army, has acquired
25  trademark rights in the mule when used in conjunction with Army Names, the Army seal,
26  the Army emblem, or any other markings affiliated with the Department of the Army.

27                 **THE AIR FORCE AND ITS TRADEMARKS**

28      45.  The name "United States Air Force" has been uniquely associated with the

1   United States Department of the Air Force ("Department of the Air Force") since

2   September 18, 1947 pursuant to the National Security Act of 1947.

3   46.  The United States Air Force Academy ("Air Force Academy") located in

4   Colorado Springs, Colorado is a subordinate organization of the Department of the Air

5   Force.

6   47.  The mascot of the Air Force Academy is a falcon.

7   48.  The falcon has been associated with the Air Force Academy since 1955, when

8   the Class of 1959 selected the falcon as the Air Force Academy's mascot.  The first

9   falcon mascot was named "Mach 1."  Since 1955, the falcon has continuously been used

10  as a mascot of the Air Force Academy.

11  49.  The falcon has appeared at Air Force Academy athletic events as well as in

12  many magazines and brochures, which depict a connection between the falcon and the Air

13  Force Academy.  In addition to the live falcon mascot, a person dressed in a falcon

14  costume also appears at athletic events.

15  50.  The Air Force Academy has used and continues to use the falcon mascot in

16  conjunction with the names "United States Air Force," "U.S. Air Force," "U.S. Air Force

17  Academy," "Air Force Academy," "Air Force," and other forms thereof ("Air Force

18  Names").

19  51.  As a result of the extensive use by the Air Force Academy of the falcon in

20  connection with Air Force Names, as well as media attention and publicity, the falcon has

21  acquired incalculable goodwill and value, and is now recognized throughout the United

22  States and the world as being uniquely and unmistakably associated with the Air Force

23  Academy and the Department of the Air Force.

24  52.  The falcon, used in conjunction with Air Force Names, the Air Force seal, the

25  Air Force coat of arms, the Air Force symbol, or other markings affiliated with the

26  Department of the Air Force, is famous and is among the best known trademarks in the

27  United States.

28  53.  The United States, through the Department of the Air Force, has acquired

-7-

1  trademark rights in the falcon when used in conjunction with Air Force Names, the Air

2  Force seal, the Air Force coat of arms, the Air Force symbol, or any other markings

3  affiliated with the Department of the Air Force.

4      54.  The Department of the Air Force has developed the Air Force Coat of Arms

5  ("USAF Coat of Arms").  The Department of the Air Force has licensed and continues to

6  license the USAF Coat of Arms to various licensees for a variety of products, including

7  but not limited to hats, apparel, coins, emblems, and decals.  A true and correct image of

8  the USAF Coat of Arms is attached to this Complaint as Exhibit 3.

9      55.  Through the Department of the Air Force's use of the USAF Coat of Arms, it

10  owns trademark rights in the USAF Coat of Arms.

11      **THE COAST GUARD AND ITS TRADEMARKS**

12      56.  The name "United States Coast Guard" has been uniquely associated with the

13  United States Coast Guard ("USCG") since 1915 pursuant to an act of Congress.  The

14  history of the USCG dates back to August 4, 1790 when Congress authorized

15  construction of 10 vessels to enforce tariff and trade laws and to prevent smuggling.

16      57.  The USCG operates as an agency of the Department of Homeland Security.

17      58.  The United States Coast Guard Academy ("USCGA"), located in New

18  London Connecticut, is a subordinate organization of the USCG.

19      59.  The mascot of the USCGA is a bear, named "Objee."

20      60.  The bear has been associated with the USCGA since 1926, when a female,

21  black bear cub arrived on campus and was taken in by the cadets.  The cub was

22  nicknamed "Objectionable," due to her objectionable behavior, which was soon shortened

23  to "Objee."  Constantly, from 1926 to 1984, a live bear lived on USCGA grounds

24  spending the majority of its time in a cage, astride the campus observatory, overlooking

25  the Thames River.

26      61.  Since 1984, Objee has continued as the USCGA mascot.  All of the USCGA

27  athletic teams are named the Bears and an Objee statue is located on the USCGA campus

28  at "Bear Plaza."

62.  The USCGA has used and continues to use the bear mascot in conjunction with the names "United States Coast Guard," "U.S. Coast Guard," "U.S. Coast Guard Academy," "Coast Guard Academy," "Coast Guard," and other forms thereof ("Coast Guard Names").

63.  As a result of the extensive use by the USCGA of the bear in connection with Coast Guard Names, as well as media attention and publicity, the bear has acquired incalculable goodwill and value, and is now recognized throughout the United States and the world as being uniquely and unmistakably associated with the USCGA and the USCG.

64.  The United States, through the USCG, has acquired trademark rights in the bear when used in conjunction with Coast Guard Names, the USCG emblem, the USCG seal, or any other markings affiliated with the USCG.

## DEFENDANTS' WRONGFUL CONDUCT

65.  Without the permission of the Department of the Navy, defendants have created a design of a goat ("Defendants' Goat Design") depicting a feisty goat, sporting a round cap traditionally worn by Naval enlisted sailors, and a red, heart-and-arrow tattoo on its left front leg.  The goat is depicted with a beaded chain and name tag displaying the word "Navy" around its neck.  To the right and left of the goat illustration appear graphics depicting an eagle and shield.  Above the picture of the goat are the words "United States" and below the picture of the goat is the word "Navy."

66.  In January 1983, defendant Diann Wall-Wilson received a letter from the United States Marine Corps Exchange granting permission to use the USMC emblem on shirts to be sold in Marine Corps exchanges.  Contemporaneous with receipt of the letter, defendant Diann Wall-Wilson created a design of a bulldog ("Defendants' Bulldog Design") depicting a bulldog dressed in a hat bearing the EGA emblem with a beaded chain and name tag displaying the United States Marine Corps's initials - "U.S.M.C." - around the bulldog's neck.  The design further incorporates the EGA emblem to both the right and left of the bulldog as well as the words "United States Marine Corps" in a

circular pattern around the bulldog.

67.  Without permission of the Department of the Army, defendants have created a design of a mule ("Defendants' Mule Design") depicting an angry-looking mule with a red, star-shaped brand above its left hind leg and a beaded chain displaying the word "Army" around its neck.  To the right and left of the mule is the Army seal.  Above the mule are the words "United States," and below the mule is the word "Army."

68.  Without permission of the Department of the Air Force, defendants have created a design of a falcon ("Defendants' Falcon Design") depicting a falcon with large yellow talons and a chain displaying the lettering "U.S.A.F." around its neck.  The words "United States" appear above the falcon and the words "Air Force" appear below the falcon.  A depiction of the USAF Coat of Arms appears to the right and left of the falcon.

69.  Without permission of the USCG, defendants have created a design of a bear ("Defendants' Bear Design") depicting an angry bear wearing a hat similar to those worn by USCG officers with a beaded chain with the initials "U.S.C.G." around its neck.  A lighthouse beaming the words "Semper" and "Paratus" appears behind the bear.  The words "United States" appear above the bear and the words "Coast Guard" appear below the bear.  To the right and left of the bear is a depiction of the USCG emblem.

70.  Defendants' Bulldog Design, Defendants' Goat Design, Defendants' Mule Design, Defendants' Falcon Design, and Defendants' Bear Design (collectively "Defendants' Designs"), all falsely suggest an association with, endorsement or approval by, the Government Agencies and the United States through its agencies, namely, the Department of the Navy, the Department of the Army, the Department of the Air Force, and the USCG.

71.  Without the United States' permission, defendants have been licensing Defendants' Designs to others, whose use of the Defendants' Designs on products falsely suggests an association with, or an endorsement or approval by, the Government Agencies.

72.  Upon information and belief, to this date, defendants have collected over

1  $800,000 in payments for the licensing of Defendants' Designs that falsely suggest an

2  association with, or endorsement or approval by, the United States.

3      73.  In marketing Defendants' Designs and in licensing agreements with licensees,

4  defendants hold themselves out as the "official" military mascot licensing program of the

5  Armed Forces further strengthening the false connection to the United States' military

6  branches.

7      74.  Defendants have engaged in false designations of origin through the licensing

8  of Defendants' Designs which, when viewed in their entirety, are likely to confuse,

9  mislead, and deceive the public as to the source and origin of Defendants' Designs and

10  cause the public to mistakenly believe that Defendants' Designs are authorized,

11  sponsored, or approved by one or more of the Government Agencies.

12      75.  By falsely claiming to be the "Official Military Mascot Licensing Program,"

13  defendants have engaged in false or misleading representations and descriptions of fact in

14  commercial advertising.

### FIRST CLAIM FOR RELIEF
(Unfair Competition of the Department of the Navy's Marks)

15

16      76.  The Department of the Navy's uses of its goat mascot since at least 1893 have

17  established in the minds of the public an association between the Naval Academy and the

18  goat.  The goat, when used in conjunction with Navy Names and other forms thereof, is

19  inherently distinctive and has secondary meaning as an identification of the origin of

20  goods or services.

21      77.  Without the permission of the Department of the Navy, defendants have

22  created and licensed Defendants' Goat Design which is confusingly similar to the goat

23  mascot used by the Department of the Navy.

24

25      78.  Upon information and belief, defendants have offered and licensed

26  Defendants' Goat Design in interstate commerce.

27      79.  As a direct consequence of defendants' actions, the general public is likely to

28  be, and has been, deceived or confused into believing that Defendants' Goat Design is

1  authorized, sponsored, or approved by the Department of the Navy on behalf of the

2  United States.

3      80.  Defendants' purpose in adopting and using Defendants' Goat Design is to

4  deceive or confuse the public into believing that the Department of the Navy is the origin

5  of Defendants' Goat Design, so as to enable defendants to profit from the Department of

6  the Navy's substantial fame, reputation and goodwill enjoyed in the Department of the

7  Navy's goat mascot and the Navy Names.

8      81.  Defendants' uses of Defendants' Goat Design constitute false designation as

9  to origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

10     82.  By reason of defendants unlawful actions and practices, the United States has

11 suffered, and will continue to suffer damage to its reputation and goodwill for which the

12 United States is entitled to injunctive relief and an award of damages.

13                     **SECOND CLAIM FOR RELIEF**
                (False or Misleading Descriptions and Representations of
14              Fact Regarding the Department of the Navy's Marks)

15     83.  In marketing Defendants' Designs and in licensing agreements with licensees,

16 defendants hold themselves out as the "official" military mascot licensing program of the

17 Armed Forces in order to strengthen the false connection to the United States' military

18 branches.

19     84.  Defendants' Designs are not the "official" military mascot of the Armed

20 Forces.

21     85.  Defendants' Goat Design is not the "official" military mascot of the

22 Department of the Navy.

23     86.  Defendants are not affiliated with the Department of the Navy.

24     87.  Defendants' licensing program is not sponsored by, endorsed by, or affiliated

25 with the Department of the Navy or any of the Government Agencies.

26     88.  Defendants' statement that they are the "official" military mascot licensing

27 program of the Armed Forces constitutes false or misleading descriptions and

28 representations of fact  in violation of the Lanham Act, 15 U.S.C. § 1125(a).

89.  Upon information and belief, defendants actions have caused relevant consumers to be confused and deceived as to defendants' authority, sponsorship, or approval by the Department of the Navy to license Defendants' Goat Design and have caused harm to the United States' goodwill for which the United States is entitled to injunctive relief and an award of damages.

### THIRD CLAIM FOR RELIEF
(Unfair Competition of the United States Marine Corps' Marks)

90.  The USMC's uses of its bulldog mascot since at least 1921 have established in the minds of the public an association between the USMC and the bulldog.  The bulldog, when used in conjunction with USMC Names, and other forms thereof, is inherently distinctive and has secondary meaning as an identification of the origin of goods or services.

91.  Without the permission of the USMC, defendants have created and licensed Defendants' Bulldog Design which is confusingly similar to the bulldog mascot used by the USMC.

92.  Upon information and belief, defendants have offered and licensed Defendants' Bulldog Design in interstate commerce.

93.  As a direct consequence of defendants' actions, the general public are likely to be, and have been, deceived or confused into believing that Defendants' Bulldog Design is authorized, sponsored, or approved by the USMC on behalf of the United States.

94.  Defendants' purpose in adopting and using Defendants' Bulldog Design is to deceive or confuse the public into believing that the USMC is the origin of Defendants' Bulldog Design, so as to enable defendants to profit from the USMC's substantial fame, reputation and goodwill in the USMC's bulldog mascot and the USMC Names.

95.  Defendants' uses of Defendants' Bulldog Design constitute false designation as to origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

96.  By reason of defendants unlawful actions and practices, the United States has suffered, and will continue to suffer damage to its goodwill for which the United States is

1  entitled to injunctive relief and an award of damages.

2  **FOURTH CLAIM FOR RELIEF**
   (False or Misleading Descriptions and Representations of
3  Fact Regarding the United States Marine Corps' Marks)

4  97.  In marketing Defendants' Designs and in licensing agreements with licensees,

5  defendants hold themselves out as the "official" military mascot licensing program of the

6  Armed Forces in order to strengthen the false connection to the United States' military

7  branches.

8  98.  Defendants' Designs are not the "official" military mascot of the Armed

9  Forces.

10  99.  Defendants' Bulldog Design is not the "official" military mascot of the

11  USMC.

12  100.  Defendants are not affiliated with the USMC.

13  101.  Defendants' licensing program is not sponsored by, endorsed by, or affiliated

14  with the USMC or any of the Government Agencies.

15  102.  Defendants' statement that they are the "official" military mascot licensing

16  program of the Armed Forces constitutes false or misleading descriptions and

17  representations of fact  in violation of the Lanham Act, 15 U.S.C. § 1125(a).

18  103.  Upon information and belief, defendants actions have caused relevant

19  consumers to be confused and deceived as to defendants' authority, sponsorship, or

20  approval by the USMC to license Defendants' Bulldog Design and have caused harm to

21  the United States' goodwill for which the United States is entitled to injunctive relief and

22  an award of damages.

23  **FIFTH CLAIM FOR RELIEF**
   (Trademark Infringement of the Army's Registered Trademarks)
24

25  104.  Defendants' uses and licensing of Defendants' Mule Design are likely to

   cause, and have caused, confusion, mistake, or deception as to the source, sponsorship, or
26
   affiliation of Defendants' Mule Design in violation of the Lanham Act, 15 U.S.C. § 1114.
27
   105.   Without the permission of the Department of the Army, defendants have
28

-14-

1   created and licensed Defendants' Mule Design which is confusingly similar to the Army's

2   Registered Trademarks.

3       106.  Upon information and belief, defendants have offered and licensed

4   Defendants' Mule Design in interstate commerce.

5       107.  As a direct consequence of defendants' actions, the general public is likely to

6   be, and has been, deceived or confused into believing that Defendants' Mule Design is

7   authorized, sponsored, or approved by the Department of the Army on behalf of the

8   United States.

9       108.  Defendants' purpose in adopting and using Defendants' Mule Design is to

10  deceive or confuse the public into believing that the Department of the Army is the origin

11  of Defendants' Mule Design, so as to enable defendants to profit from the Department of

12  the Army's substantial fame, reputation and goodwill in the Army's Registered

13  Trademarks.

14      109.  Defendants' uses of Defendants' Mule Design constitute trademark

15  infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

16      110.  By reason of defendants unlawful actions and practices, the United States has

17  suffered, and will continue to suffer damage to its reputation and goodwill for which the

18  United States is entitled to injunctive relief and an award of damages.

19                        **SIXTH CLAIM FOR RELIEF**

20           (Unfair Competition of the Department of the Army's Marks)

21      111.  The Department of the Army's uses of its mule mascot since at least 1899

22  have established in the minds of the public an association between the Department of the

23  Army and the mule.  The mule when used in conjunction with Army Names, and other

24  forms thereof, is inherently distinctive and has secondary meaning as an identification of

25  the origin of goods or services.

26      112.  Without the permission of the Department of the Army, defendants have

27  created and licensed Defendants' Mule Design which is confusingly similar to the mule

28  mascot used by the Department of the Army.

-15-

1     113.  Upon information and belief, defendants have offered and licensed

2  Defendants' Mule Design in interstate commerce.

3     114.  As a direct consequence of defendants' actions, the general public is likely to

4  be, and has been, deceived or confused into believing that Defendants' Mule Design is

5  authorized, sponsored, or approved by the Department of the Army on behalf of the

6  United States.

7     115.  Defendants' purpose in adopting and using Defendants' Mule Design is to

8  deceive or confuse the public into believing that the Department of the Army is the origin

9  of Defendants' Mule Design, so as to enable defendants to profit from the Department of

10  the Army's substantial fame, reputation and goodwill in the Department of the Army's

11  mule mascot and the Army Names.

12     116.  Defendants' uses of Defendants' Mule Design constitute false designation as

13  to origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

14     117.  By reason of defendants unlawful actions and practices, the United States has

15  suffered, and will continue to suffer damage to its reputation and goodwill for which the

16  United States is entitled to injunctive relief and an award of damages.

17                **SEVENTH CLAIM FOR RELIEF**
                (False or Misleading Descriptions and Representations of

18                Fact Regarding the Department of the Army's Marks)

19     118.  In marketing Defendants' Designs and in licensing agreements with

20  licensees, defendants hold themselves out as the "official" military mascot licensing

21  program of the Armed Forces in order to strengthen the false connection to the United

22  States' military branches.

23     119.  Defendants' Designs are not the "official" military mascot of the Armed

24  Forces.

25     120.  Defendants' Mule Design is not the "official" military mascot of the

26  Department of the Army.

27     121.  Defendants are not affiliated with the Department of the Army.

28     122.  Defendants' licensing program is not sponsored by, endorsed by, or affiliated

1 with the Department of the Army or any of the Government Agencies.

2     123.  Defendants' statement that they are the "official" military mascot licensing

3 program of the Armed Forces constitutes false or misleading descriptions and

4 representations of fact  in violation of the Lanham Act, 15 U.S.C. § 1125(a).

5     124.  Upon information and belief, defendants actions have caused relevant

6 consumers to be confused and deceived as to defendants' authority, sponsorship, or

7 approval by the Department of the Army to license Defendants' Mule Design and have

8 caused harm to the United States' goodwill for which the United States is entitled to

9 injunctive relief and an award of damages.

10                          **EIGHTH CLAIM FOR RELIEF**
                (Unfair Competition of the Department of the Air Force's Marks)

11

12     125.  The Department of the Air Force's uses of its falcon mascot since at least

13 1955 have established in the minds of the public an association between the Department

14 of the Air Force and the falcon.  The falcon when used in conjunction with Air Force

15 Names, and other forms thereof, is inherently distinctive and has secondary meaning as an

16 identification of the origin of goods or services.

17     126.  Without the permission of the Department of the Air Force, defendants have

18 created and licensed Defendants' Falcon Design which is confusingly similar to the mule

19 mascot used by the Department of the Air Force.

20     127.  Upon information and belief, defendants have offered and licensed

21 Defendants' Falcon Design in interstate commerce.

22     128.  As a direct consequence of defendants' actions, the general public is likely to

23 be, and has been, deceived or confused into believing that Defendants' Falcon Design is

24 authorized, sponsored, or approved by the Department of the Air Force on behalf of the

25 United States.

26     129.  Defendants' purpose in adopting and using Defendants' Falcon Design is to

27 deceive or confuse the public into believing that the Department of the Air Force is the

28 origin of Defendants' Falcon Design, so as to enable defendants to profit from the

-17-

1  Department of the Air Force's substantial fame, reputation and goodwill in the

2  Department of the Air Force's falcon mascot and the Air Force Names.

3    130.  Defendants' uses of Defendants' Falcon Design constitute false designation

4  as to origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

5    131.  By reason of defendants unlawful actions and practices, the United States has

6  suffered, and will continue to suffer damage to its reputation and goodwill for which the

7  United States is entitled to injunctive relief and an award of damages.

8                         **NINTH CLAIM FOR RELIEF**
                    (False or Misleading Descriptions and Representations of
9                    Fact Regarding the Department of the Air Force's Marks)

10    132.  In marketing Defendants' Designs and in licensing agreements with

11  licensees, defendants hold themselves out as the "official" military mascot licensing

12  program of the Armed Forces in order to strengthen the false connection to the United

13  States' military branches.

14    133.  Defendants' Designs are not the "official" military mascot of the Armed

15  Forces.

16    134.  Defendants' Falcon Design is not the "official" military mascot of the

17  Department of the Air Force.

18    135.  Defendants are not affiliated with the Department of the Air Force.

19    136.  Defendants' licensing program is not sponsored by, endorsed by, or affiliated

20  with the Department of the Air Force or any of the Government Agencies.

21    137.  Defendants' statement that they are the "official" military mascot licensing

22  program of the Armed Forces constitutes false or misleading descriptions and

23  representations of fact  in violation of the Lanham Act, 15 U.S.C. § 1125(a).

24    138.  Upon information and belief, defendants' actions have caused relevant

25  consumers to be confused and deceived as to defendants' authority, sponsorship, or

26  approval by the Department of the Air Force to license Defendants' Falcon Design and

27  have caused harm to the United States' goodwill for which the United States is entitled to

28  injunctive relief and an award of damages.

## TENTH CLAIM FOR RELIEF
(Unfair Competition of the United States Coast Guard's Marks)

139.  The USCG's uses of its bear mascot since at least 1926 have established in the minds of the public an association between the USCG and the bear.  The bear when used in conjunction with Coast Guard Names, and other forms thereof, is inherently distinctive and has secondary meaning as an identification of the origin of goods or services.

140.  Without the permission of the USCG, defendants have created and licensed Defendants' Bear Design which is confusingly similar to the bear mascot used by the USCG.

141.  Upon information and belief, defendants have offered and licensed Defendants' Bear Design in interstate commerce.

142.  As a direct consequence of defendants' actions, the general public is likely to be, and has been, deceived or confused into believing that Defendants' Bear Design is authorized, sponsored, or approved by the USCG on behalf of the United States.

143.  Defendants' purpose in adopting and using Defendants' Bear Design is to deceive or confuse the public into believing that the USCG is the origin of Defendants' Bear Design, so as to enable defendants to profit from the USCG's substantial fame, reputation and goodwill in the USCG's bear mascot and the Coast Guard Names.

144.  Defendants' uses of Defendants' Bear Design constitute false designation as to origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

145.  By reason of defendants unlawful actions and practices, the United States has suffered, and will continue to suffer damage to its reputation and goodwill for which the United States is entitled to injunctive relief and an award of damages.

## ELEVENTH CLAIM FOR RELIEF
(False or Misleading Descriptions and Representations of
Fact Regarding the United States Coast Guard's Marks)

146.  In marketing Defendants' Designs and in licensing agreements with licensees, defendants hold themselves out as the "official" military mascot licensing

1  program of the Armed Forces in order to strengthen the false connection to the United

2  States' military branches.

3      147.  Defendants' Designs are not the "official" military mascot of the Armed

4  Forces.

5      148.  Defendants' Bear Design is not the "official" military mascot of the USCG.

6      149.  Defendants are not affiliated with the USCG.

7      150.  Defendants' licensing program is not sponsored by, endorsed by, or affiliated

8  with the USCG or any of the Government Agencies.

9      151.  Defendants' statement that they are the "official" military mascot licensing

10  program of the Armed Forces constitutes false or misleading descriptions and

11  representations of fact  in violation of the Lanham Act, 15 U.S.C. § 1125(a).

12      152.  Upon information and belief, defendants' actions have caused relevant

13  consumers to be confused and deceived as to defendants' authority, sponsorship, or

14  approval by the USCG to license Defendants' Bear Design and have caused harm to the

15  United States' goodwill for which the United States is entitled to injunctive relief and an

16  award of damages.

## PRAYER FOR RELIEF

18      WHEREFORE, the United States prays that this Court enter judgment in its favor

19  and grant the following relief:

20      A.  An injunction enjoining defendants and their officers, directors, employees,

21  subsidiaries, affiliates, agencies, and/or instrumentalities from using any mark, trade

22  name or source identifier, which is confusingly similar to the Navy Goat Trademarks, the

23  USMC Bulldog Trademarks, the Army Mule Trademarks, the Air Force Falcon

24  Trademarks, and the Coast Guard Bear Trademarks, including but not limited to

25  Defendants' Goat Design, Defendants' Bulldog Design, Defendants' Mule Design,

26  Defendants' Falcon Design, and Defendants' Bear Design and variations thereof;

27      B.  An injunction enjoining defendants from providing, offering, advertising or

28  promoting in any way any of Defendants' Designs, or variations thereof, that falsely

1 convey an association with the Department of the Navy, the USMC, the Department of

2 the Army, the Department of the Air Force, or the Department of the Coast Guard on

3 behalf of the United States;

4    C.  That the United States be awarded their actual damages in an amount to be

5 proven at trial;

6    D.  That defendants be required to account for any revenues attributable to their

7 acts in violation of the Lanham Act;

8    E.  That the United States be awarded three times any damages sustained by the

9 United States, and prejudgment interest;

10    F.  That punitive damages be awarded to the United States;

11    G.  That all products, brochures, advertisements, and promotional materials in

12 possession of defendants bearing the Defendants' Designs, or any word, term, name,

13 symbol, device, combination thereof, designation, description, or representation that is

14 found in violation of the Lanham Act, or any reproduction, counterfeit, copy, or colorable

15 imitation thereof, and all plates, molds, matrices, and other means of making the same,

16 shall be delivered up by defendants and destroyed;

17    H.  That pursuant to 15 U.S.C. § 1116, defendants file and serve a report under

18 oath within thirty (30) days of the issuance of injunctive relief indicating the manner in

19 which they have complied with any injunctive relief ordered by the Court;

20    I.  That the United States be awarded reasonable attorney fees in prosecuting this

21 action; and

22    J.  That the United States be granted such other and further relief which the Court

23 deems just and proper.

24 //

25 //

26 //

27 //

28 //

1    Respectfully submitted this 18th day of December, 2009.

2

3                                 TONY WEST
                                  Assistant Attorney General

4                                 JOHN FARGO
                                  Director

5
                                  s/Steven O. Fortney
6                                 STEVEN O. FORTNEY
                                  Attorney
7                                 Commercial Litigation Branch
                                  Civil Division
8                                 Department of Justice
                                  Washington, D.C.  20530
9                                 Telephone:  (202) 307-0343
                                  Facsimile:   (202) 307-0345
10                                Steven.O.Fortney@usdoj.gov

11                                Attorneys for the United States

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28